FILED
CLERK, U.S. DISTRICT COURT
9/10/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: JB DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2021 Grand Jury

| UNITED STATES OF AMERICA, | CR 2:21-cr-00424-SVW |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 641: Theft of Government Property; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| KAREN SARKISYAN, aka "Kevin Sarkisyan," | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH SEVEN

[18 U.S.C. §§ 641, 2]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.  San Gabriel Hospice and Palliative Care, Inc. ("San Gabriel"), was a home health agency located at 427 S. Victory Blvd., Burbank, California 91502. San Gabriel discharged all patients and ceased operating in or around July 2019.

2.  Defendant KAREN SARKISYAN, also known as "Kevin Sarkiysan," was a resident of Glendale, California, and was the

beneficial owner of San Gabriel.

3. Defendant SARKISYAN controlled and was a signatory on a business checking account ending in x0164 in the name of San Gabriel held at a bank in Los Angeles County (the "San Gabriel Bank Account").

### The CARES Act Provider Relief Fund

4. In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was designed to provide emergency financial assistance to the millions of Americans suffering due to the COVID-19 pandemic.

5. The CARES Act appropriated moneys to help health care providers ("Providers") that were financially impacted by COVID-19, as well as to provide care to patients who were suffering from COVID-19 and compensate providers for the cost of that care (the "Provider Relief Fund"). The United States Department of Health and Human Services ("HHS"), through its agency, the Health Resources and Services Administration ("HRSA"), oversaw and administered the Provider Relief Fund.

6. In order to rapidly provide funding to Providers during the pandemic, HRSA distributed payments under the CARES Act Provider Relief Fund ("Provider Relief Fund Payment" or "Payment") to Providers who: (a) billed Medicare fee-for-service (Parts A or B) in Calendar Year 2019; (b) were not currently terminated from participation in Medicare or precluded from receiving payment through Medicare Advantage or Part D; (c) were not currently excluded from participation in Medicare, Medicaid, and other Federal health care programs; and (d) did not currently have Medicare billing privileges revoked. Providers

meeting these criteria automatically received the Provider Relief Fund Payment and did not have to apply for the funding, but were required to comply with the terms and conditions of the Provider Relief Fund ("Terms and Conditions") if they retained such funding.

<u>Terms and Conditions of Provider Relief Payment</u>

7.   Provider Relief Fund recipients attested to their compliance with the Terms and Conditions in one of two ways. First, Provider Relief Fund recipients were notified that they could submit an attestation through an online portal confirming receipt of the funds and agreeing to the Terms and Conditions. Second, recipients were notified that, if they kept the money for a period that exceeded 90 days from receipt, they were deemed to have accepted the Terms and Conditions of the Provider Relief Fund.

8.   Providers who attested to the Terms and Conditions acknowledged that their commitment to full compliance with the terms and conditions was material to the HHS Secretary's decision to disburse Provider Relief Fund Payments to them. Providers further acknowledged that non-compliance with any Term or Condition could cause the HHS Secretary to recoup some or all of the Payment.

9.   Providers who attested to the Terms and Conditions certified that they:

   a.   billed Medicare in Calendar Year 2019;

   b.   provided diagnoses, testing, or care for individuals with possible or actual cases of COVID-19 after January 31, 2020;

3

1         c.    were not then terminated from participation in
2  Medicare or precluded from receiving payment through Medicare
3  Advantage or Part D;
4         d.    were not then excluded from participation in
5  Medicare, Medicaid, and other Federal health care programs;
6         e.    did not then have Medicare billing privileges
7  revoked;
8         f.    would only use the Payment to prevent, prepare
9  for, and respond to coronavirus, and that the Payment would
10 reimburse the recipient only for health-care-related expenses or
11 lost revenues that were attributable to coronavirus;
12        g.    provided information relating to the Payment that
13 was true, accurate, and complete and that any deliberate
14 omission, misrepresentation, or falsification of any information
15 was punishable by, inter alia, criminal penalties, including but
16 not limited to imprisonment; and
17        h.    would maintain appropriate records and cost
18 documentation to substantiate the reimbursement of costs under
19 the disbursement.
20 B.   THEFT OF GOVERNMENT PROPERTY
21    10.  On or about the dates set forth below, in Los Angeles
22 County, within the Central District of California, and
23 elsewhere, defendant SARKISYAN knowingly and willfully stole,
24 purloined, and converted to his own use and the use of another
25 money of HHS, a department of the United States, namely, the
26 following amounts, each exceeding $1,000, of an approximately
27 $91,483.60 payment from the HHS Provider Relief Fund that was
28 deposited into the San Gabriel Bank Account on April 17, 2020,

to which defendant SARKISYAN knew he was not entitled, with the intent to deprive HHS of the use and benefit of that money:

| COUNT | DATE | APPROX. AMOUNT | DESCRIPTION |
|---|---|---|---|
| ONE | 4/17/20 | $9,625 | Check #11285 |
| TWO | 4/17/20 | $9,850 | Check #11283 |
| THREE | 4/17/20 | $2,205.01 | Check #11284 |
| FOUR | 4/20/20 | $16,325 | Check #11293 |
| FIVE | 4/20/20 | $11,675 | Check #11296 |
| SIX | 4/20/20 | $15,000 | Check #11289 |
| SEVEN | 4/20/20 | $20,000 | Check #11295 |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

11. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant KAREN SARKISYAN, also known as "Kevin Sarkisyan," that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant SARKISYAN's conviction under any of Counts One through Seven of this Indictment.

12. Defendant SARKISYAN, if so convicted, shall forfeit to the United States of America the following:

    a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

13. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant SARKISYAN, so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

_____/S/_____
Foreperson

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Deputy Chief, Major Frauds Section

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
U.S. Department of Justice

NIALL M. O'DONNELL
Assistant Chief, Fraud Section
U.S. Department of Justice

PATRICK J. QUEENAN
Trial Attorney, Fraud Section
U.S. Department of Justice