Elon Berk, Esq. [SBN 209642]
**GUROVICH, BERK & ASSOCIATES, APC**
15250 Ventura Blvd., Suite 1220
Sherman Oaks, California 91403
Tel: (818) 205-1555
Fax: (818) 205-1559
Attorney for Defendant
**Karen Sarkisyan**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **CASE NO.: 21-CR-00424-SVW** |
| Plaintiffs, | ) **DEFENDANT'S NOTICE OF MOTION AND** |
| | ) **MOTION FOR BILL OF PARTICULARS** |
| v. | ) |
| KAREN SARKISYAN, et al, | ) DATE: October 24, 2022 |
| | ) TIME: 11AM |
| Defendant. | ) |

PLEASE TAKE NOTICE that on October 24, 2022, at 11 A.M. or, as soon as this matter may be heard in Courtroom 10A, within this Court, located at 350 West 1st Street, 8th Floor, Los Angeles, California, 90012, Defendant Karen Sarkisyan ("Defendant"), by and through his counsel of record, Elon Berk, Esq., of the Law Offices Gurovich, Berk & Associates, hereby move this Honorable Court for an order for the Government to produce a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. Defendant seeks a bill of particulars so that, among other things, he may adequately prepare his defense and avoid prejudicial surprise at trial.

---

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

1

2

3

4 Dated: October 3, 2022                    Respectfully Submitted,

5

6                                            **/s/ Elon Berk**
                                             Elon Berk,
7                                            Attorney for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES..............................1

I. NATURE OF INDICTMENT ........................................1

ARGUMENT.......................................................8

II.  A BILL OF PARTICULARS SHOULD BE GRANTED WHEN THE
     INDICTMENT FAILS TO PROVIDE FACTUAL INFORMATION
     REQUIRED BY THE DEFENSE...................................8

III. PARTICULARS SHOULD BE PROVIDED IN THIS CASE..............14

CONCLUSION....................................................26

# TABLE OF AUTHORITIES

## Cases

*United States v. Addonizio*
451 F.2d 49 (3d Cir. 1971)................................8

*United States v. Barnes*
158 F.3d 662 (2d Cir. 1998)...............................9

*United States v. Bortnovsky*
820 F.2d 572 (2d Cir. 1987)...................9, 10, 12, 14

*United States v. Buckley*
689 F.2d 893 (9th Cir. 1982).............................10

*United States v. Cafaro*
26 F.R.D. 170 (S.D.N.Y. 1960)............................13

*United States v. Carona*
No. SA CR 06-224, 2008 WL 1970199,
(C.D. Cal. May 2, 2008).................................12

*United States v. Chen*
No. C 05-375, 2006 WL 3898177 (N.D. Cal. Nov. 9, 2006).........9

*United States v. Crippen*
579 F.2d 340 (5th Cir. 1978).............................12

*United States v. Crisona*
271 F. Supp. 150 (S.D.N.Y. 1967).........................13

*United States v. Davidoff*
845 F.2d 1151 (2d Cir. 1988).........................10, 14

*United States v. Fassoulis*
49 F.R.D. 43 (S.D.N.Y. 1969).............................13

United States v. Greater Syracuse Bd. of Realtors
438 F. Supp. 376 (N.D.N.Y. 1977).........................9

*United States v. Konefal*
566 F. Supp. 698 (N.D.N.Y. 1983).........................13

*United States v. McCoy*
492 F. Supp. 540 (M.D. Fla. 1980)........................13

*United States v. Long*
706 F.2d 1044 (9th Cir. 1983)...................7, 8, 10, 14

*United States v. Oberski*
734 F.2d 1034 (5th Cir. 1984)............................12

*United States v. Recognition Equipment*, Inc.
711 F. Supp. 1 (D.D.C. 1989) ............................13

*United States v. Risk*
    672 F. Supp. 346, 360 (S.D. Ind. 1987),
    aff'd, 843 F.2d 1059 (7th Cir. 1988)......................13

*United States v. Rogers*
    617 F. Supp. 1024 (D. Colo. 1985)......................8, 12

*United States v. Rosa*
    891 F.2d 1063 (3d Cir. 1989)..............................9

*United States v. Smith*
    16 F.R.D. 372 (W.D. Mo. 1954)..............................9

*United States v. Smith*,
    65 F.R.D. 464 (N.D. Ga. 1974)..............................8

United States v. Spur Knitting Mills, Inc.,
    187 F. Supp. 653 (S.D.N.Y. 1960)..........................9

*United States v. Thevis*
    474 F. Supp. 117 (N.D. Ga. 1979),
    aff'd, 665 F.2d (5th Cir. 1982)...........................8

*United States v. Trumpower*
    546 F. Supp. 2d 849 (E.D. Cal. 2008).................10, 11

*United States v. Upton*
    856 F. Supp. 727 (E.D.N.Y. 1994).......................12

*Wong Tai v. United States*
    273 U.S. 77, 47 S. Ct. 300 (1927).........................8

**Statutes**

Fed. R. Crim. P. 7..................................8, 10, 14

1        **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    NATURE OF SUPERSEDING INDICTMENT**

3         Mr. Sarkisyan has owned a consulting and billing businesses for

4    over 15 years.  His billing company (Home Health Billing Services,

5    Inc.) has 11 employees while his consulting company (Sarkisyan

6    Consulting, Inc.) has 4 employees.  These businesses have been

7    extremely successful and operate, almost, independently of Mr.

8    Sarkisyan's personal involvement.  Mr. Sarkisyan has extensive

9    experience in home health and hospice consulting and his billing

10   company serviced approximately 600 healthcare agencies. Aside from his

11   billing and consulting businesses ("companies"), Mr. Sarkisyan

12   operated a successful Home Health agency in Victorville, California,

13   owns commercial real estate, and is involved in many other business

14   ventures.

15        In addition to the aforementioned, Mr. Sarkisyan had engaged in

16   establishing licensed home health and hospice agencies for the sole

17   purpose of re-selling such agencies once fully licensed by the State

18   of California and Medicare certified.  This was how Mr. Sarkisyan

19   became the owner of San Gabriel Hospice ("SG").  Essentially, after

20   establishing SG as a fully certified Medicare Hospice agency, Mr.

21   Sarkisyan sold SG to "Nominee 1."  After the sale of SG, Mr.

22   Sarkisyan's companies continued to provide limited consulting services

23   (specifically, reporting of ownership and address changes to Medicare)

24   and billing services for SG. By the same token, Mr. Sarkisyan's

25   involvement with Broadway Hospice ("Broadway") was limited to

26   providing professional services throughout its existence.

27        The Superseding Indictment in this case fails to set forth

28   critical information regarding the offenses charged.  It alleges a

_____
**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS**

wide-ranging and complex schemes between Defendant Karen Sarkisyan ("Sarkisyan"), along with Defendants Gayk Akhsharumov ("Akhsharumov") and Babken Chalkadryan ("Chatkadryan), with: Conspiracy to commit Health Care Fraud (18 U.S.C. § 1349), Health Care Fraud (18 U.S.C. § 1347); Wire Fraud (18 U.S.C. § 1343), Theft of Government Property (18 U.S.C. § 641), Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(h)), Money Laundering (18 U.S.C. § 1957), Concealment of Money Laundering (18 U.S.C. § 1956 (a)(1)(B)(i)), and seeks counts of forfeiture.

According to the Superseding Indictment, Mr. Sarkisyan was part of a scheme to defraud Medicare (and other Governmental agencies) by allegedly recruiting individuals as "nominee owners" of two Hospice agencies (San Gabriel and Broadway Hospice), concealing the fact that Mr. Sarkisyan has ownership interest and control in said Hospice agencies, conspiring with his Co-Defendants to pay kick-backs for patient recruitment, and billing for services that he knew not to be medically necessary and, often, not even rendered.  The Superseding Indictment further alleges that Defendants participated in a scheme to defraud the Small Business Administration ("SBA"), and the Department of Health and Human Services (HHS) through the Provider Relief Fund ("PRF").

In the present case, the Government produced voluminous discovery in connection with the initial single defendant Indictment herein and new production subsequent to the unsealing of the Superseding Indictment.  The Defense has, in the course of its independent investigation, provided the Government with certain exculpatory records consisting of witness interview reports, financial records, expert witness report and defense subpoena returns.  Moreover, the

Government served subpoenas onto Defendant's two companies which resulted in an extensive production.  Finally, the Government interviewed three employees from Defendant's two companies who were present during relevant times.

Contained within the Government productions are witness interview statements, various banking records and subpoena returns (totaling over 279,000 pages). However, included within the aforementioned were substantial financial records relating to a person with the same name as Defendant Sarkisyan but with different personal identifying information.  It seemed that the government did not realize the error and followed up with an extensive investigation (including many subpoenas) based on wrong Mr. Sarkisyan's records.  Defense pointed out the error to the government on June 1, 2022.  Nonetheless, during the government's subsequent witness interviews, the government continued to investigate down the path of the wrong Mr. Sarkisyan by inquiring knowledge of a women related to the wrong Mr. Sarkisyan. Defense is pointing to this error simply in support of the necessity of the Bill of Particulars sought herein.

In addition to the Superseding Indictment and the discovery produced, the Government, during the Pretrial hearing on September 6, 2022, proffered to the Court that one of the checks issued by SG (Counts 8-14) benefitted Mr. Sarkisyan directly.  Yet, the extensive discovery fails to support such assertion.

Based on the Indictment and the Government productions do date, the crux of the Government's case is that:

(1) Mr. Sarkisyan remained one of two signatories for SG after the sale of SG to "Nominee 1";

(2) SG and Broadway tendered payments to Mr. Sarkisyan's companies

1 (All payments were made prior to the disbursement of the Pandemic

2 Relief Funds (PRF)- example of which is Count 16 of the Superseding

3 Indictment wherein Sarkisyan Consulting received a $50,000 payment, on

4 8/28/18, from SG per its obligation to pay the remainder of the

5 purchase agreement.);

6 (3) the I.P. address from where the PRF attestations and SBA

7 Applications originated belongs to an entity (Laks Investment Group,

8 LLC.) where Mr. Sarkisyan is a partner (Laks owns a 3 story building

9 with over 20 tenants - one of which is Mr. Akhsharumov, a Co-Defendant

10 in the Superseding Indictment herein);

11 (4) One of the several employees of SG which were interviewed the

12 Government indicated that Mr. Sarkisyan was present at one meeting at

13 San Gabriel and he believed him to be one of the owners of San Gabriel

14 (However, the aforementioned was contradicted by a follow-up defense

15 interview of the same witness who indicated that the Government's

16 report was inaccurate.  More importantly, however, the Government

17 interviewed two cooperating witnesses that indicated that they did not

18 know who is Mr. Sarkisyan and could not identify his image; and

19 (5) Government interviewed the owner of Desert Oasis (Armen

20 Harutyunyan), a recipient of a check in the sum of $20,000 from San

21 Gabriel PRF funds.  The report drafted by the Government Special Agent

22 indicated that Mr. Harutyunyan advised the Agent that Mr. Sarkisyan is

23 his partner (the memorandum is silent as to any further questions by

24 the agent to further inquire as to the nature of the aforementioned

25 partnership).

26      In the course of the Defense extensive investigation, however,

27 the Government was provided with the following exculpatory and

28 contradictory evidence:

(1) Defense produces the contract and supporting documentation for the sale of SG from Mr. Sarkisyan to "Nominee 1." The contract for the sale of SG indicated that payments were to be made subsequent to the execution of the contract (These are typical terms when selling an entity that requires Medicare approval of the sale);

(2) Defense provided evidence that bank policy dictates that the removal of the original signor on the corporate bank account for SG would trigger closure of the SG bank account (which was registered with Medicare at the time of sale);

(3) All the evidence is such that after the sale of SG, Mr. Sarkisyan did not sign any further checks or caused any transactions to be executed with respect to the SG business account;

(4) Defense provided memorandums of interviews of SG landlord wherein subsequent to the sale of SG, the landlord was aware of Mr. Sarkisyan's departure as owner and, thereafter, dealt directly with new ownership;

(5) Defense re-interviewed the one SG employee that identified Mr. Sarkisyan as an owner of SG wherein he indicated that the SA's memorandum was inaccurate and he never identified Mr. Sarkisyan by name or picture;

(6) Defense further interviewed other SG employees regarding ownership, management, and any other involvement by Mr. Sarkisyan in SG. The Medical Director of SG and Broadway(a licensed MD), who personally worked at SB and Broadways offices, did not identify Mr. Sarkisyan as an owner or manager and has never known, met or communicated with him. The Administrator and Director of Nursing for SG yielded the same result;

(7) In the Government's 4th discovery production, the defense has

learned that the government secured proffers from SG managerial staff who did not know who Mr. Sarkisyan was and have never heard of him; (8) The defense interviewed a field nurse who knew of Mr. Sarkisyan on a personal level and was shocked by the allegation of Mr. Sarkisyan's ownership and control of SG. Finally, Defense provided the Government with interview memorandum of a healthcare consultant that was retained by SG for hospice consulting services that Mr. Sarkisyan's business would be more than capable of performing (especially if he would retain ownership interest);

(9) Defense also provided a proffer from the attorney for Mr. Harutyunyan that indicated that the Government interview report is inaccurate and he never stated that Mr. Sarkisyan was his partner or had any ownership interest in Desert Oasis Group;

(10) Defense subpoenaed Mr. Sarkisyan's personal cell phone/cell tower records wherein on April 23, 2020 at two different times when the HHS PRF attestation and PPP certifications were made, Mr. Sarkisyan was out of vicinity of his office and was driving (as evidenced by moving from one cell tower to another);

(11) Defense provided an analysis of telephone call records (provided by the Government) that Mr. Sarkisyan did not have any communication with either "Nominee 1," SG office, Co-Defendant Chalkadryan or any key employees of SG during the relevant times;

(12) Defense expert analysis that the IP captured by HHS and SBA could not have been generated from Mr. Sarkisyan's office computers, but was generated from other offices in the Laks building;

(13) Supporting documentation such as invoices and communication in support of SG and Broadway payments to Mr. Sarkisyan's billing and consulting companies; and

(14) Defense provided evidence that in or about May through July of 2019, SG accrued an outstanding balance with Mr. Sarkisyan's billing service (Home Health Billing Services, Inc.) In the sum of $7,276.52 which was never paid, even after SG received the PRF (illustrating that Mr. Sarkisyan did not have any control over SG, its employees or banking).

In Reviewing the Superseding Indictment, coupled with all the available discovery, justice requires the Court order the government to file a bill of particulars so that Mr. Sarkisyan knows the nature of the charges and accusations against him with sufficient particularity to defend himself. Otherwise, Mr. Sarkisyan is not able to prepare for trial, and is not on notice of the charges against him in order to properly and effectively defend himself against these egregious, false charges.  The Superseding Indictment and discovery leave many unanswered questions, resulting in Mr. Sarkisyan being constantly surprised. Mr. Sarkisyan cannot properly defend himself without knowing, for example, how is he the alleged "beneficial owner" of SG and Broadway and was actively involved in the alleged schemes to defraud?  Moreover, Mr. Sarkisyan must have sufficient information to gather exculpatory evidence to defend all of these charges and provide said information to the government and Honorable Court for pre-trial dismissal consideration and/or Jury Trial. These shortcomings are not mitigated by the availability of discovery.

Courts across the country have been clear that the government cannot avoid its duty to advise a defendant of the charges against him, by requiring the defendant to search through a mountain of documents, here in excess of 279,000 pages provided so far in discovery. Because the indictment lacks critical information about the

1  charged offenses, Mr. Sarkisyan moves for a Bill of Particulars.

2

3                              **ARGUMENT**

4  <u>**II.   A BILL OF PARTICULARS SHOULD BE GRANTED WHEN THE INDICTMENT FAILS
   TO PROVIDE FACTUAL INFORMATION REQUIRED BY THE DEFENSE**</u>

5

6       Under Rule 7(f) of the Federal Rules of Criminal Procedure, a

7  district court has broad discretion to order the government to provide

8  a bill of particulars. See *Wong Tai v. United States*, 273 U.S. 77, 82,

9  47 S. Ct. 300, 302, 71 L. Ed. 545, 548 (1927); *United States v. Long*,

10 706 F.2d 1044, 1054 (9th Cir. 1983). The 1966 amendment to Rule 7(f),

11 which eliminated the requirement that cause be shown before a court

12 will order a bill of particulars, was "designed to encourage a more

13 liberal attitude by the courts toward bills of particulars without

14 taking away the discretion which courts must have in dealing with such

15 motions in individual cases." Fed. R. Crim. P. 7(f) advisory

16 committee's note; see *United States v. Addonizio*, 451 F.2d 49, 64 (3d

17 Cir. 1971); *United States v. Smith*, 65 F.R.D. 464, 468 (N.D. Ga.

18 1974). In accordance with the spirit of the 1966 amendment, defendants

19 should "be given the benefit of the doubt in gray areas." *United*

20 *States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979), aff'd, 665

21 F.2d 616 (5th Cir. 1982); accord *United States v. Rogers*, 617 F. Supp.

22 1024, 1028 (D. Colo. 1985).

23      A bill of particulars is designed "to apprise the defendant of

24 the specific charges being presented to minimize danger of surprise at

25 trial, to aid in preparation [of his defense] and to protect against

26 double jeopardy." *Long*, 706 F.2d at 1054. "[T]he case law now

27 recognizes that motions for a bill of particulars should be granted

28 whenever an indictment's failure to provide factual or legal

---

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989). Where a bill of particulars is "necessary to give the defendant enough information about the charge to prepare his defense, it will be required even if the effect is disclosure of evidence or of theories." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotations omitted).

When a bill of particulars serves one or more of the aforementioned purposes, "it is no answer to an otherwise proper demand . . . that the particulars sought are evidentiary, or involve the naming of potential witnesses at trial." *United States v. Greater Syracuse Bd. of Realtors*, 438 F. Supp. 376, 379 (N.D.N.Y. 1977). "Similarly, it is no answer that the defendant should know the facts demanded, for the defendant is presumed to be innocent; in any event, the Bill of Particulars is aimed at the facts as alleged by the Government, rather than as they actually exist." Id.; *United States v. Spur Knitting Mills, Inc.*, 187 F. Supp. 653, 654 (S.D.N.Y. 1960) (stating that the issue is not what the defendant knows, but "what the Government intends to prove"); *United States v. Smith*, 16 F.R.D. 372, 375 (W.D. Mo. 1954) ("Being presumed to be innocent, it must be assumed that he is ignorant of the facts on which the pleader founds his charges . . . ." (internal quotations omitted)).

In addition, voluminous discovery does not obviate the need for a bill of particulars. "Given the breadth and complexity of this case, requiring defendant to search through a mountain of discovery does not satisfy the obligation to adequately advise defendant of the charges against him." *United States v. Chen*, No. C 05-375, 2006 WL 3898177, at

*3 (N.D. Cal. Nov. 9, 2006); see also *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.").

Mr. Sarkisyan seeks "clarification [of the Superseding Indictment] in order to prepare a defense," *Long*, 706 F.2d at 1054. The purpose of a Bill of Particulars is clear: *Rule 7(f)* of the Federal Rules of Criminal Procedure permits Mr. Sarkisyan to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling Mr. Sarkisyan to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. (*United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).)

In both *Bortnovsky* and *Davidoff*, the Court of Appeals reversed convictions on the basis that it was error to deny a bill of particulars where the information sought was critical to the defendant's preparation of a defense and where the bill would have prevented the government's elusive approach to the prosecution of the case. There is a similar critical need for the information requested here.

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the

1    offense intended to be punished". (Emphasis added). *United States v.*

2    *Trumpower*, 546 F. Supp. 2d 849, 850-52 (E.D. Cal. 2008). Additionally,

3    the Trumpower court indicated that two corollary purposes of an

4    indictment are: (1) to ensure that the defendant is being prosecuted

5    on the basis of the facts presented to the grand jury, and (2) to

6    allow the court to determine the sufficiency of the indictment. *United*

7    *States v. Buckley*,689 F.2d 893, 896 (9th Cir. 1982).

8        Here, it is questionable what Defendant Sarkisyan is being

9    prosecuted for. Was there a conspiracy between him and the legal owner

10   of SG and Broadway?  If so, what was his involvement? Were there other

11   un-charged members of an alleged conspiracy? By what means did Mr.

12   Sarkisyan exercise control over SG and/or Broadway and their bank

13   accounts other than as a signer on the account of SG (Where he did not

14   sign any checks)? What was Mr. Sarkisyan's involvement in the alleged

15   Healthcare Fraud? Same for the allegations of wire fraud.  How did the

16   checks in the 7 Counts of the Indictment indicate that Mr. Sarkisyan

17   knowingly and willfully steel, purloine, and convert to his own use

18   and the use of another money of HHS (did the money transfer to an

19   account belonging to Mr. Sarkisyan or for his benefit)?  The

20   Superseding Indictment and available discovery leaves more questions

21   than notice to the Defendant of the charges against him.  The

22   indictment's failure to address the aforementioned concerns

23   significantly impairs Mr. Sarkisyan's ability to prepare a defense,

24   and ensures he will be surprised when the Government presents its case

25   at trial.

26       Federal courts have recognized repeatedly the significance of

27   such information, and routinely require the government to provide it

28   in a bill of particulars. As one court has explained:

1  　　　　[T]he government must provide particularization of allegedly
2  　　　　false statements made by defendants. General allegations of false
3  　　　　statements . . . are not sufficient. This criminal case should
4  　　　　not differ from any civil matter where allegations of fraud and
5  　　　　misrepresentations must be pleaded with particularity under Fed.
6  　　　　R. Civ. P. 9(b). In fact, application of this rule in criminal
7  　　　　cases is even more compelling than in civil matters because
8  　　　　defendants' liberty interests are at stake. . . . The government
9  　　　　must reveal the substance, date, time, and place of each false
10 　　　　statement or concealment and the persons involved.
11 *Rogers*, 617 F. Supp. at 1029 (citations omitted); see also *Bortnovsky*,
12 820 F.2d at 574-75 (2d Cir. 1987) (reversing convictions based on
13 district court's refusal to order particulars regarding specific
14 insurance claims and invoices alleged to be fraudulent); *United States*
15 *v. Oberski*, 734 F.2d 1034, 1035 (5th Cir. 1984) (factual details
16 concerning manner in which statement is alleged to be perjurious "if
17 essential to the defense, can be obtained in a motion for a bill of
18 particulars"); *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir.
19 1978) (factual details concerning manner in which perjurious statement
20 is alleged to be material "if essential to the defense, can be
21 obtained by a motion for a bill of particulars, and failure to grant
22 such a motion may be reversible error" (citation omitted)); *United*
23 *States v. Carona*, No. SA CR 06-224, 2008 WL 1970199, at *3 (C.D. Cal.
24 May 2, 2008) (holding that "[i]f the Grand Jury understood Count Six
25 as alleging that Michael Carona made false and misleading statements,"
26 it would "reconsider Defendants' arguments for a bill of particulars"
27 identifying such statements and the respect in which they are false); *United*
28 *States v. Upton*, 856 F. Supp. 727, 753 (E.D.N.Y. 1994)

(requiring government to identify documents it intends to prove are false, even though indictment detailed "33 specific instances of falsification of records"); *United States v. Recognition Equipment*, Inc., 711 F. Supp. 1 (D.D.C. 1989) (ordering the government to identify "the statements, concealment, and misrepresentations, . . . as well as when and to whom these alleged statements, concealments, and misrepresentations were made"); *United States v. Risk*, 672 F. Supp. 346, 360 (S.D. Ind. 1987), aff'd, 843 F.2d 1059 (7th Cir. 1988) (ordering government "to disclose to the defendant the specific portions, segments, or sentences" of bank report government alleged to be false); *United States v. Konefal*, 566 F. Supp. 698, 703 (N.D.N.Y. 1983) (requiring government to disclose "what statements it contends are false"); *United States v. McCoy*, 492 F. Supp. 540, 545 (M.D. Fla. 1980) ("The defendant is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment."); *United States v. Fassoulis*, 49 F.R.D. 43, 45 (S.D.N.Y. 1969) (ordering disclosure of "false statements alleged and a summary of the respects in which it is claimed that the statements were false"); *United States v. Crisona*, 271 F. Supp. 150, 157 (S.D.N.Y. 1967) (ordering disclosure of "the substance of any false representations"); *United States v. Cafaro*, 26 F.R.D. 170, 172 (S.D.N.Y. 1960) (ordering disclosure of manner in which statements were claimed to be false).

    In the present case, the Government makes general allegations without any details as to Mr. Sarkisyan's involvement in what seems to be several conspiracies with the main goal is to engage in healthcare, wire fraud, and subsequent allegations of money laundering.  Yet, other than making the general allegations that Mr. Sarkisyan was, in

1  fact, a co-conspirator or aider and abetter, the government fails to

2  particularize its allegations herein.  Mr. Sarkisyan seeks

3  "clarification [of the Superseding Indictment] in order to prepare a

4  defense," *Long*, 706 F.2d at 1054. The purpose of a Bill of Particulars

5  is clear: *Rule 7(f)* of the Federal Rules of Criminal Procedure permits

6  Mr. Sarkisyan to seek a bill of particulars in order to identify with

7  sufficient particularity the nature of the charge pending against him,

8  thereby enabling Mr. Sarkisyan to prepare for trial, to prevent

9  surprise, and to interpose a plea of double jeopardy should he be

10  prosecuted a second time for the same offense. (*Bortnovsky*, at 574;

11  *Davidoff*, at 1154)

12

13  **III.  <u>PARTICULARS SHOULD BE PROVIDED IN THIS CASE</u>**

14         In summary, all of the available discovery to date indicates that

15  none of the government witnesses (cooperating or otherwise), suggest

16  that these witnesses knew, heard or ever seen Mr. Sarkisyan in the

17  capacity of an owner, manager, operator or "beneficial owner" of SG

18  and/or Broadway.  In fact, both of the witnesses that have proffered

19  had zero knowledge of Mr. Sarkisyan nor of any alleged managerial or

20  ownership role by Mr. Sarkisyan, as alleged in the Superseding

21  Indictment.

22         Accordingly, the defendant requests the following particulars:

23  **<u>As to The General Allegations:</u>**

24  <u>Paragraph 5 of the Superseding Indictment stating, in part:</u>

25  that Defendant remained "the beneficial owner of San Gabriel" and

26  that Defendant remained the "manager and consultant and continued to

27  control.."

28

a. That the government state the circumstances under which, and the words or conduct by means of which Mr. Sarkisyan remained "the beneficial owner of San Gabriel" and That Defendant remained the "manager and consultant and continued to control.."

Paragraph 10 of the Superseding Indictment stating, in part:
that "Defendant was the beneficial owner, manager, and consultant for Broadway Hospice.

a. That the government state the circumstances under which, and the words or conduct by means of which Mr. Sarkisyan was the beneficial owner, manager, and consultant for Broadway Hospice.

**Count One:**
a. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when the alleged conspiracy began;
b. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when Mr. Sarkisyan and each and every alleged co-conspirator, whether or not named in the Indictment, purportedly joined in and, where applicable, withdrew from the charged conspiracy;
c. That the government state the circumstances under which, and the words or conduct by means of which Mr. Sarkisyan and each and every alleged co-conspirator, whether or not named in the Indictment, purportedly entered into said conspiracy;
d. That the government identify the specific words or actions,

---

including their date, time, place, and nature, upon which the government intends to rely as overt acts purportedly committed in furtherance of said conspiracy;

e. That the government state the manner in which Mr. Sarkisyan and each alleged co-conspirator, whether or not named in the Indictment, contributed to the charged conspiracy, and the date, time and place of said participation;

f. That the government provide a list of the overt acts, including their date, time, and place allegedly performed by Mr. Sarkisyan and each and every alleged co-conspirator, whether or not named in the Indictment, in furtherance of the conspiracy or any substantive offense;

g. That the government state the names and addresses of any co-conspirators or other co-participants not named in the Indictment, but known to the government, who participated in the alleged conspiracy;

h. That the government state whether it contends that the conspiracy alleged in the Indictment constitutes one encompassing conspiracy or several separate and distinct conspiracies, as it pertains to Mr. Sarkisyan and any co-conspirators or other co-participants whether or not named in the Indictment;

i. That the government state the period or periods of time during which each defendant or co-conspirator, or co-participant, remained in the said conspiracy; and

g. That the government state whether any alleged conspiracy, or the joining of such conspiracy by Mr. Sarkisyan and any co-conspirators or other co-participants whether or not named in the Indictment, was expressed, in whole or in part, in writing or orally.

**Counts Two through Five:**

a. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when Sarkisyan began his participation in the scheme and aiding and abetting each and every alleged person, co-schemer, whether or not named in the Indictment;

b. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when Mr. Sarkisyan and each and every alleged aider and abetter, whether or not named in the Indictment, purportedly aided and abetted each other;

c. That the government state the circumstances under which, and the words or conduct by means of which Mr. Sarkisyan and each and every alleged aider and abetter, whether or not named in the Indictment, purportedly aided and abetted each other;

d. That the government identify the specific words or actions, including their date, time, place, and nature, upon which the government intends to rely as acts purportedly committed in furtherance of said scheme to defraud;

e. That the government state the manner in which Mr. Sarkisyan and each alleged co-schemer and/or aider and abetter, whether or not named in the Indictment, contributed to the charged scheme to defraud, and the date, time and place of said participation;

f. That the government provide a list of the acts, including their date, time, and place allegedly performed by Mr. Sarkisyan and each and every alleged co-schemer and/or aider and abetter, whether or not named in the Indictment, in furtherance of the commission of the substantive offenses;

g. That the government state the names and addresses of any co-schemers and/or aider and abetters, or other co-participants not named in the Indictment, but known to the government, who participated in the alleged commission of the alleged offenses;

h. That the government state whether it contends that the scheme to defraud alleged in the Indictment constitutes one encompassing scheme or several separate and distinct schemes, as it pertains to Mr. Sarkisyan and any co-participants whether or not named in the Indictment;

i. That the government state the period or periods of time during which each defendant or co-schemer, aider and abetter, or co-participant, remained in the said scheme to defraud; and

g. That the government state whether any alleged scheme to defraud, or the aiding and abetting of such scheme by Mr. Sarkisyan and any co-conspirators or other co-participants whether or not named in the Indictment, was expressed, in whole or in part, in writing or orally.

**Counts Six and Seven:**

a. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when Sarkisyan began his participation in the scheme and aiding and abetting each and every alleged person, co-schemer, whether or not named in the Indictment;

b. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when Mr. Sarkisyan and each and every alleged aider and abetter, whether or not named in the Indictment, purportedly aided and abetted each other;

---

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

c. That the government state the circumstances under which, and the words or conduct by means of which Mr. Sarkisyan and each and every alleged aider and abetter, whether or not named in the Indictment, purportedly aided and abetted each other;

d. That the government identify the specific words or actions, including their date, time, place, and nature, upon which the government intends to rely as acts purportedly committed in furtherance of said scheme to defraud;

e. That the government state the manner in which Mr. Sarkisyan and each alleged co-schemer and/or aider and abetter, whether or not named in the Indictment, contributed to the charged scheme to defraud, and the date, time and place of said participation;

f. That the government provide a list of the acts, including their date, time, and place allegedly performed by Mr. Sarkisyan and each and every alleged co-schemer and/or aider and abetter, whether or not named in the Indictment, in furtherance of the commission of the substantive offenses;

g. That the government state the names and addresses of any co-schemers and/or aider and abetters, or other co-participants not named in the Indictment, but known to the government, who participated in the alleged commission of the alleged offenses;

h. That the government state whether it contends that the scheme to defraud alleged in the Indictment constitutes one encompassing scheme or several separate and distinct schemes, as it pertains to Mr. Sarkisyan and any co-participants whether or not named in the Indictment;

i. That the government state the period or periods of time during which each defendant or co-schemer, aider and abetter, or co-

1  participant, remained in the said scheme to defraud; and

2  g. That the government state whether any alleged scheme to defraud, or

3  the aiding and abetting of such scheme by Mr. Sarkisyan and any

4  co-conspirators or other co-participants whether or not named in the

5  Indictment, was expressed, in whole or in part, in writing or orally.

6

7  **Counts Eight through Fourteen:**

8  a. That the government identify the precise date, time, place and

9  nature of the earliest statement and/or event upon which the

10 government relies to establish when Sarkisyan began his participation

11 in the scheme and aiding and abetting each and every alleged person,

12 co-schemer, whether or not named in the Indictment;

13 b. That the government identify the precise date, time, place and

14 nature of the earliest statement and/or event upon which the

15 government relies to establish when Mr. Sarkisyan and each and every

16 alleged aider and abetter, whether or not named in the Indictment,

17 purportedly aided and abetted each other;

18 c. That the government state the circumstances under which, and the

19 words or conduct by means of which Mr. Sarkisyan and each and every

20 alleged aider and abetter, whether or not named in the Indictment,

21 purportedly aided and abetted each other;

22 d. That the government identify the specific words or actions,

23 including their date, time, place, and nature, upon which the

24 government intends to rely as acts purportedly committed in

25 furtherance of said scheme to defraud;

26 e. That the government state the manner in which Mr. Sarkisyan and

27 each alleged co-schemer and/or aider and abetter, whether or not named

28 in the Indictment, contributed to the charged scheme to defraud, and

---

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

1  the date, time and place of said participation;

2  f. That the government provide a list of the acts, including their

3  date, time, and place allegedly performed by Mr. Sarkisyan and each

4  and every alleged co-schemer and/or aider and abetter, whether or not

5  named in the Indictment, in furtherance of the commission of the

6  substantive offenses;

7  g. That the government state the names and addresses of any

8  co-schemers and/or aider and abetters, or other co-participants not

9  named in the Indictment, but known to the government, who participated

10 in the alleged commission of the alleged offenses;

11 h. That the government state whether it contends that the scheme to

12 defraud alleged in the Indictment constitutes one encompassing scheme

13 or several separate and distinct schemes, as it pertains to Mr.

14 Sarkisyan and any co-participants whether or not named in the

15 Indictment;

16 i. That the government state the period or periods of time during

17 which each defendant or co-schemer, aider and abetter, or co-

18 participant, remained in the said scheme to defraud; and

19 g. That the government state whether any alleged scheme to defraud, or

20 the aiding and abetting of such scheme by Mr. Sarkisyan and any

21 co-conspirators or other co-participants whether or not named in the

22 Indictment, was expressed, in whole or in part, in writing or orally.

23

24 **Count Fifteen:**

25 a. That the government identify the precise date, time, place and

26 nature of the earliest statement and/or event upon which the

27 government relies to establish when the alleged conspiracy began;

28 b. That the government identify the precise date, time, place and

nature of the earliest statement and/or event upon which the
government relies to establish when Mr. Sarkisyan and each and every
alleged co-conspirator, whether or not named in the Indictment,
purportedly joined in and, where applicable, withdrew from the charged
conspiracy;

c. That the government state the circumstances under which, and the
words or conduct by means of which Mr. Sarkisyan and each and every
alleged co-conspirator, whether or not named in the Indictment,
purportedly entered into said conspiracy;

d. That the government identify the specific words or actions,
including their date, time, place, and nature, upon which the
government intends to rely as overt acts purportedly committed in
furtherance of said conspiracy;

e. That the government state the manner in which Mr. Sarkisyan and
each alleged co-conspirator, whether or not named in the Indictment,
contributed to the charged conspiracy, and the date, time and place of
said participation;

f. That the government provide a list of the overt acts, including
their date, time, and place allegedly performed by Mr. Sarkisyan and
each and every alleged co-conspirator, whether or not named in the
Indictment, in furtherance of the conspiracy or any substantive
offense;

g. That the government state the names and addresses of any
co-conspirators or other co-participants not named in the Indictment,
but known to the government, who participated in the alleged
conspiracy;

h. That the government state whether it contends that the conspiracy
alleged in the Indictment constitutes one encompassing conspiracy or

several separate and distinct conspiracies, as it pertains to Mr. Sarkisyan and any coconspirators or other co-participants not named in the Indictment;

i. That the government state the period or periods of time during which each defendant or co-conspirator, or co-participant, remained in the said conspiracy; and

g. That the government state whether any alleged conspiracy, or the joining of such conspiracy by Mr. Sarkisyan and any co-conspirators or other co-participants not named in the Indictment, was expressed, in whole or in part, in writing or orally.

**Counts Sixteen through Eighteen:**

a. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when Sarkisyan began his participation in the scheme and aiding and abetting each and every alleged person, co-schemer, whether or not named in the Indictment.

b. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when Mr. Sarkisyan and each and every alleged aider and abetter, whether or not named in the Indictment, purportedly aided and abetted each other;

c. That the government state the circumstances under which, and the words or conduct by means of which Mr. Sarkisyan and each and every alleged aider and abetter, whether or not named in the Indictment, purportedly aided and abetted each other;

d. That the government identify the specific words or actions, including their date, time, place, and nature, upon which the

1   government intends to rely as acts purportedly committed in
2   furtherance of said scheme to defraud;
3   e. That the government state the manner in which Mr. Sarkisyan and
4   each alleged co-schemer and/or aider and abetter, whether or not named
5   in the Indictment, contributed to the charged scheme to defraud, and
6   the date, time and place of said participation;
7   f. That the government provide a list of the acts, including their
8   date, time, and place allegedly performed by Mr. Sarkisyan and each
9   and every alleged co-schemer and/or aider and abetter, whether or not
10  named in the Indictment, in furtherance of the commission of the
11  substantive offenses;
12  g. That the government state the names and addresses of any
13  co-schemers and/or aider and abetters, or other co-participants not
14  named in the Indictment, but known to the government, who participated
15  in the alleged commission of the alleged offenses;
16  h. That the government state whether it contends that the scheme to
17  defraud alleged in the Indictment constitutes one encompassing scheme
18  or several separate and distinct schemes, as it pertains to Mr.
19  Sarkisyan and any co-participants whether or not named in the
20  Indictment;
21  i. That the government state the period or periods of time during
22  which each defendant or co-schemer, aider and abetter, or co-
23  participant, remained in the said scheme to defraud; and
24  g. That the government state whether any alleged scheme to defraud, or
25  the aiding and abetting of such scheme by Mr. Sarkisyan and any
26  co-conspirators or other co-participants whether or not named in the
27  Indictment, was expressed, in whole or in part, in writing or orally.
28

---

**Counts Nineteen through Twenty-One:**

a. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when Sarkisyan began his participation in the scheme and aiding and abetting each and every alleged person, co-schemer, whether or not named in the Indictment;

b. That the government identify the precise date, time, place and nature of the earliest statement and/or event upon which the government relies to establish when Mr. Sarkisyan and each and every alleged aider and abetter, whether or not named in the Indictment, purportedly aided and abetted each other;

c. That the government state the circumstances under which, and the words or conduct by means of which Mr. Sarkisyan and each and every alleged aider and abetter, whether or not named in the Indictment, purportedly aided and abetted each other;

d. That the government identify the specific words or actions, including their date, time, place, and nature, upon which the government intends to rely as acts purportedly committed in furtherance of said scheme to defraud;

e. That the government state the manner in which Mr. Sarkisyan and each alleged co-schemer and/or aider and abetter, whether or not named in the Indictment, contributed to the charged scheme to defraud, and the date, time and place of said participation;

f. That the government provide a list of the acts, including their date, time, and place allegedly performed by Mr. Sarkisyan and each and every alleged co-schemer and/or aider and abetter, whether or not named in the Indictment, in furtherance of the commission of the substantive offenses;

g. That the government state the names and addresses of any co-schemers and/or aider and abetters, or other co-participants not named in the Indictment, but known to the government, who participated in the alleged commission of the alleged offenses;

h. That the government state whether it contends that the scheme to defraud alleged in the Indictment constitutes one encompassing scheme or several separate and distinct schemes, as it pertains to Mr. Sarkisyan and any co-participants whether or not named in the Indictment;

i. That the government state the period or periods of time during which each defendant or co-schemer, aider and abetter, or co-participant, remained in the said scheme to defraud; and

g. That the government state whether any alleged scheme to defraud, or the aiding and abetting of such scheme by Mr. Sarkisyan and any co-conspirators or other co-participants whether or not named in the Indictment, was expressed, in whole or in part, in writing or orally.

### CONCLUSION

In light of the foregoing, Defendant respectfully requests that this Court grant his motion for a Bill of Particulars.


Date: October 3, 2022                    Respectfully submitted,

                                         By: **/s/ Elon Berk**
                                         Elon Berk, Esq,
                                         Attorney for Defendant

---